[Cite as *Brown v. Terrell*, 2018-Ohio-2503.]

STATE OF OHIO         )                  IN THE COURT OF APPEALS
                               )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

THOMAS BROWN, et al.               C.A. No.      28845

     Appellant

     v.                            APPEAL FROM JUDGMENT
                                    ENTERED IN THE
YVONNE TERRELL, et al.           COURT OF COMMON PLEAS
                                    COUNTY OF SUMMIT, OHIO
     Appellee                    CASE No.     CV 2016-07-2939

## DECISION AND JOURNAL ENTRY

Dated: June 27, 2018

---

TEODOSIO, Presiding Judge.

{¶1}    Plaintiff-Appellant, Thomas Brown, appeals from the order of the Summit County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, Yvonne Terrell ("Yvonne"). This Court affirms.

I.

{¶2}    In February of 2016, Mr. Brown's seven-year-old son ("T.L.") was playing ball outside with his sister on their driveway. At some point, the ball rolled into a space close to where the next-door neighbor's pit bull was chained. The dog broke free from its chain and attacked T.L. The dog bit through T.L.'s ankle and fractured the bone, which required surgery and implants. The owner of the dog, Territa Terrell ("Territa"), lived next door at 758 Kipling Street, Akron, Ohio. Territa's grandmother, Yvonne, co-owns the house at 758 Kipling Street with her brother, but neither of the two siblings has lived there recently. Yvonne permits Territa to live there, but no written lease agreement exists. Territa rarely pays rent, but does pay for

utilities at the house. Yvonne pays for homeowners' insurance and was initially paying a friend to perform maintenance on the property, but at some point Territa took over the maintenance responsibilities.

{¶3} Mr. Brown filed a personal injury complaint on behalf of his son against Territa and Yvonne for both common law negligence and strict liability, seeking damages for medical expenses and pain and suffering as a result of the dog bite. He alleged that Territa owned the dog while Yvonne kept or harbored the animal. Yvonne filed a motion for summary judgment claiming that she was not the owner, keeper, or harborer of the dog. Allstate Indemnity Company ("Allstate") intervened as a third-party defendant and filed its own motion for summary judgment, claiming no duty to defend or indemnify Territa under the landlord insurance policy issued to Yvonne. The trial court granted summary judgment in favor of both Yvonne and Allstate.

{¶4} Mr. Brown now appeals from the trial court's order granting summary judgment and raises one assignment of error for this Court's review. On appeal, he only challenges the granting of summary judgment in favor of Yvonne.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON THE ISSUE OF HARBORER WHEN PLAINTIFF PRESENTED EVIDENCE INDICATING THAT YVONNE TERRELL CONTROLLED THE PREMISES WHERE THE DOG RESIDED AND ACQUIESCED TO THE DOG'S PRESENCE.

{¶5} In his sole assignment of error, Mr. Brown argues that the trial court erred in granting summary judgment in favor of Yvonne because he set forth evidence creating a genuine

issue of material fact regarding whether Yvonne was a harborer of the dog and the court improperly weighed the evidence presented. We disagree.

{¶6} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the nonmoving party and must resolve any doubt in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps– Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶7} The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that

there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶8} In Ohio, the two bases for recovery for injuries sustained as a result of a dog bite are common law and statutory:

[I]n a common law action for bodily injuries caused by a dog, a plaintiff must show that (1) the defendant owned or harbored the dog, (2) the dog was vicious, (3) the defendant knew of the dog's viciousness, and (4) the dog was kept in a negligent manner after the keeper knew of its viciousness.

* * *

[I]n an action for damages under R.C. 955.28, the plaintiff must prove (1) ownership or keepership [or harborship] of the dog, (2) that the dog's actions were the proximate cause of the injury, and (3) the damages. * * * [T]he defendant's knowledge of the dog's viciousness and the defendant's negligence in keeping the dog are irrelevant in a statutory action.

*Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, ¶ 7-11. "An owner is the person to whom the dog belongs." *Bowman v. Stott*, 9th Dist. Summit No. 21568, 2003-Ohio-7182, ¶ 11. "The keeper has physical charge or care of the dog." *Id.* "A harborer is one who 'has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence.'" *Id.*, quoting *Khamis v. Everson*, 88 Ohio App.3d 220, 226 (2d Dist.1993). "'Acquiescence' is essential to 'harborship' and requires some intent." *Id.*, quoting *Thompson v. Irwin*, 12th Dist. Butler No. CA97-05-101, 1997 Ohio App. LEXIS 4728, *10-11 (Oct. 27, 1997), quoting *Godsey v. Franz*, 6th Dist. Williams No. 91WM000008, 1992 Ohio App. LEXIS 1087, *10 (Mar. 13, 1992).

{¶9} Mr. Brown proceeded on a statutory claim that Yvonne was a harborer of the dog that bit his son, having later conceded in his brief opposing summary judgment that she was neither the owner nor the keeper of the animal. Yvonne filed a motion for summary judgment

claiming she was not a harborer of the dog because she has not lived at 758 Kipling Street since 1975, she was unaware of any pets owned by Territa, she had only seen Territa's dog once in three years, she never had any problems with the animal, Territa paid all the utilities associated with the house, and Territa never requested Yvonne's permission to have a dog at the house. Mr. Brown responded that Yvonne maintained control of the premises where the dog lived, knew of the dog's presence, and acquiesced to the dog residing at the house. He claimed that no landlord-tenant relationship existed between Yvonne and Territa. The parties both relied solely on Yvonne's deposition, which is the only deposition contained in record.

{¶10} The trial court found it undisputed that Yvonne did not maintain present possession of the premises, as she did not live there and no evidence was presented that she had keys to the property. The court further found that one could not reasonably infer Yvonne maintained control over the premises from the following limited evidence presented: (1) she was part owner of the property; (2) she maintained an insurance policy for the property; (3) she presumed she had the authority to evict Territa, although she has never actually evicted her; and (4) she once told Territa that she did not want a certain young man to be at the property, but never followed up to determine if Territa obeyed the instruction. Therefore, the trial court found that reasonable minds could only reach but one conclusion: "Yvonne did not maintain possession and control of the premises * * * [and] cannot be held liable as a harborer of the dog that attacked Plaintiff under R.C. 955.22 or common law."

{¶11} Mr. Brown now argues that the trial court erred in improperly weighing and determining the sufficiency of the "limited" evidence showing Yvonne was a harborer of the dog because the existence of any evidence is sufficient to render summary judgment inappropriate. *See Horner v. City of Elyria*, 9th Dist. Lorain No. 13CA010420, 2015-Ohio-47, ¶ 11 ("If

[Appellant] produced *any* Civ.R. 56(C) evidence to show the existence of a genuine issue of material fact for trial, then Appellees were not entitled to summary judgment." (Emphasis sic.)).

{¶12} "'[I]t is well-established that a lease transfers both possession and control of the leased premises to the tenant.'" *Young v. Robson Foods*, 9th Dist. Lorain No. 08CA009499, 2009-Ohio-2781, ¶ 7, quoting *Richeson v. Leist*, 12th Dist. Warren No. CA2006-11-138, 2007-Ohio-3610, ¶ 13. In the case sub judice, there is no written lease and the relationship between Yvonne and Territa regarding the property appears rather informal and is not a typical landlord-tenant relationship. The available details of their exact arrangement are scant, but Yvonne acknowledged that she co-owns the house with her brother while Territa is permitted to live in the house. Territa rarely, but sometimes, pays rent and there are no consequences for not paying rent. Nonetheless, a landlord-tenant relationship can still exist under an oral agreement, even when the tenant does not pay rent. *See Morris v. Cordell*, 1st Dist. Hamilton No. C-150081, 2015-Ohio-4342, ¶ 14, citing *Tucker v. Kanzios*, 9th Dist. Lorain No. 08CA009429, 2009-Ohio-2788, ¶ 21. *See also* R.C. 5321.01(D) (defining "rental agreement.").

{¶13} A landlord out of possession is generally not the harborer of a tenant's dog for the purposes of dog bite liability. *Hall v. Zambrano*, 9th Dist. Wayne No. 13CA0047, 2014-Ohio-2853, ¶ 10. However, a landlord can and should be liable if the dog attacks someone in the common areas or in the area shared by both the landlord and the tenant. *Id.* Common areas are areas over which multiple people have possession and control. *Engwert-Loyd v. Ramirez*, 6th Dist. Lucas No. L-06-1084, 2006-Ohio-5468, ¶ 11. They typically include areas such as sidewalks, parking lots, foyers, and hallways which are under the control of the lessor and which are reasonably necessary to the use and enjoyment of the leased property. *Hau v. Gill*, 9th Dist. Lorain No. 98CA007061, 1999 Ohio App. LEXIS 3258, *13 (July 14, 1999). When the property

at issue consists of a single-family residence situated on a normal-sized city lot, there is a presumption that the tenants possess and control the *entire* property. *Young* at ¶ 7. *See also Good v. Murd*, 6th Dist. Lucas No. L-13-1235, 2014-Ohio-2216, ¶ 10 ("The yard of a single-family home is considered to be part of the tenant's property to possess and control."). A landlord is not deemed to be in possession and control of the premises simply because she retains the right to inspect them. *Young* at ¶ 10. Courts have further stated that "routine and common acts conducted by a landlord, such as making repairs, paying taxes, insuring the structure, and the like, do not constitute the control necessary to establish liability." *Morris* at ¶ 14. *See also Richeson* at ¶ 15 (including the power to evict and the authority to approve or disapprove structural changes as routine and common acts that do not constitute "control" for purposes of liability in tort.); *Martin v. Lambert*, 4th Dist. Meigs No. 12CA7, 2014-Ohio-715, ¶ 24. Instead, "[t]he control necessary as the basis for liability in tort implies the power and the right to admit [people to the property] and to exclude people [from it]." *Prince v. Weslea*, 9th Dist. Summit No. 9997, 1981 Ohio App. LEXIS 12358, *3 (June 17, 1981), quoting *Cooper v. Roose*, 151 Ohio St. 316, 319 (1949). *See also Kovacks v. Lewis*, 5th Dist. Tuscarawas No. 2010 AP 01 0001, 2010-Ohio-3230, ¶ 27 ("The hallmark of control is the ability to advent or to exclude others from the property.").

{¶14} Here, Yvonne stated that she has not lived in the house since 1975, but has allowed Territa to live there since sometime after Yvonne and her brother inherited it from their late mother. Some type of oral agreement or arrangement existed in which Territa could live in the house and pay Yvonne rent whenever possible. She stated that Territa is the only one that is supposed to live in the house, and when asked if she has the power to have Territa move out for non-payment of rent she replied, "I should, yes." A landlord's power to evict a tenant is

generally regarded as a routine and common act, so Yvonne's statement that she should be able to evict Territa is not indicative of "control" for purposes of tort liability. *See Richeson* at ¶ 15; *Martin* at ¶ 24; *Payne v. Ohio Performance Academy, Inc.*, 10th Dist. Franklin No. 17AP-202, 2017-Ohio-8006, ¶ 20, 29. Regarding a prior domestic incident in which a young man fired a gun in the house, Yvonne recalled not wanting the man at the house anymore: "I just told [Territa] at the time I just didn't want the young man to be there." Yvonne admittedly never checked to see if Territa subsequently allowed the man to return to the house. Yvonne's statements are only indicative of her personal desire for the man not be on the property and do not establish that she has the ability to exclude people from the property or has in fact exercised such a right. *See Krause v. Spartan Store, Inc.*, 158 Ohio App.3d 304, 2004-Ohio-4365, ¶ 17 (6th Dist.) (stating "control" involves both the right and power to admit or exclude persons from the premises as well as a substantial exercise of that right and power).

{¶15} Regardless, no evidence was presented to demonstrate that Yvonne maintained possession and control of any common areas or shared areas outside of the house, where the dog was chained and where the attack occurred, and Mr. Brown failed to overcome the presumption that Territa had exclusive possession and control of the entire property. When asked if she had been to the property since Territa obtained the dog, Yvonne initially replied, "Let's see, I can't remember. I don't think so[,]" but then stated, "I know about it, but if it was, I was outside." Yvonne stated that she only visited the house three times in three years while "probably in the driveway," and admitted, "I think I saw that dog about one time." Thus, the evidence only established that Yvonne has not lived there for the past several decades and has only visited Territa three times in three years, likely remaining somewhere outside during these rare visits. A landlord's knowledge that a tenant is keeping a dog on the leased premises, standing alone, does

not support a finding that the landlord harbored the dog, absent evidence that the landlord has retained possession and control of the leased premises. *See Coontz v. Hoffman*, 10th Dist. Franklin No. 13AP-367, 2014-Ohio-274, ¶ 24. *See also Young* at ¶ 11 (stating it is immaterial whether a landlord acquiesced in the dog's presence when the landlord did not have possession and control of the property).

{¶16} Mr. Brown urges us to consider the Fourth District Court of Appeals' decision in *Hill v. Hughes*, 4th Dist. Ross No. 06CA2917, 2007-Ohio-3885. In *Hill*, the appellate court reversed the trial court's partial summary judgment in a dog bite case, concluding a genuine issue of material fact remained as to whether a father harbored a son's dog because the father acknowledged he possessed the authority or right to make his son get rid of the dog. *Id.* at ¶ 20. But, the *Hill* case has received some criticism in recent years from our sister district courts. *See Schneider v. Kumpf*, 2d Dist. Montgomery No. 26955, 2016-Ohio-5161, ¶ 41 (stating *Hill* involves a departure from most Ohio cases and further noting the dissent in *Hill*); *Good*, 2014-Ohio-2216, at ¶ 12 ("The only court to have rendered a decision which appears contrary to the prevailing case law is *Hill* * * *."); *Coontz* at ¶ 18 ("To the extent that *Hill* subjects a landlord to liability for an attack by the tenants' dog that occurred upon premises within the exclusive possession of the tenant, the *Hill* case conflicts with the established precedent in Ohio * * *.").

{¶17} Mr. Brown likens the facts in *Hill* to the instant case and claims Yvonne clearly had the power to tell Territa to get rid of the dog and in fact asserted that power by not permitting Territa to have another dog after this incident. But, Mr. Brown misstates the evidence presented in this case and, notwithstanding its criticism as an outlier case, the facts in *Hill* appear to be distinguishable. *Hill* involved a father and son living on contiguous properties owned by the father, which raised questions in the appellate court as to whether the father had more possession

and control over the property than a typical landlord. *Hill* at ¶ 19. The father also stated he had the authority to tell his son to get rid of the dog. *Id.* at ¶ 19-20. When asked if she would have given Territa permission to get a dog if Territa had asked her about it prior to actually getting one, Yvonne said, "I don't know. I doubt it * * * because we just fixed up the house." When later asked if she would have any objection to Territa getting a new dog, Yvonne replied, "Well, I don't know. I don't know[] because I have a dog of my own." Yvonne was also asked if she ordered Territa to get rid of the dog after he attacked and she replied, "No." When asked again later if Territa was permitted to have another dog on the property, Yvonne replied, "Within five years * * * that's my understanding." She then clarified that it must have been the courts that put that restriction on Territa. Thus, the evidence does not show, as Mr. Brown suggests, that Yvonne clearly had the right to prohibit Territa from having a dog and asserted any such right to prohibit Territa from getting a dog after this incident.

{¶18} This Court, in construing the evidence in a light most favorable to Mr. Brown, agrees with the trial court's conclusion that there was no genuine issue of material fact as to whether Yvonne was a harborer of Territa's dog. We disagree with Mr. Brown's contention that the trial court improperly weighed evidence that Yvonne harbored the dog, as no evidence was presented to overcome the presumption that Territa possessed and controlled the entire property and no evidence was presented to show that Yvonne possessed or controlled any common or shared areas outside where the dog was chained and where the attack occurred. We therefore conclude that the trial court did not err in granting summary judgment in this matter.

{¶19} Accordingly, Mr. Brown's assignment of error is overruled.

III.

{¶20} Mr. Brown's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JESSICA M. BACON, Attorney at Law, for Appellant.

PAUL R. MORWAY and DAVID P. STADLEY, Attorneys at Law, for Appellee.