[Cite as *Anderson v. Centrone*, 2024-Ohio-1021.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| WILLIAM T. ANDERSON, JR. | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023CA00117 |
| REGINA A. CENTRONE, ET AL | : |  |
|  | : |  |
| Defendants-Appellees | : | OPINION |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2022CV00366

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 18, 2024

APPEARANCES:

For Plaintiff-Appellant

GEORGE ORYSHKEWYCH
6100 Oak Tree Boulevard
Suite 200
Independence, OH 44131

For Defendant-Appellee

THOMAS J. CABRAL
DANIEL G. LONERGAN
1215 Superior Ave., 7th Floor
Cleveland, OH 44114

*Gwin, J.,*

{¶1}   Appellant appeals the August 25, 2023 judgment entry of the Stark County Court of Common Pleas granting appellee's motion for summary judgment.

*Facts & Procedural History*

{¶2}   Appellee Roland Centrone is Regina Centrone's father.   Prior to 2019, Regina moved in and out of appellee's home.   Regina and several of her dogs lived in appellee's home in January of 2019, including a dog named Bella.   Appellee was angry when Regina got Bella because appellee was already taking care of several of Regina's dogs.   Appellee testified he, "didn't want [Bella].   I didn't like [Bella]" because Bella had attacked appellee's Jack Russell terrier.   Appellee tried to control Bella by pulling back on the dog's leash, but Regina informed him he could not do that because Bella was previously abused.   Appellee felt that if he could not properly train the dog, the dog could not stay in his home.   Appellee told Regina that Bella was no longer welcome in his home.

{¶3}   In the summer of 2019, Regina moved out of appellee's home into an apartment attached to a kennel where she worked.   Appellee testified that, at that point, Regina "knew the dog wasn't allowed back in our house."

{¶4}   Appellant William T. Anderson, Jr. met Regina in August or September of 2020 via an online dating site.   Approximately one year later, they moved in together at appellant's home that he owned in Rittman, Ohio.   When Regina moved into appellant's home, she owned three dogs.   Initially, the dogs did not come with her to appellant's home, as they stayed at the kennel where Regina worked.   However, within several weeks of Regina moving in, she brought the dogs to live with her and appellant at appellant's home.

{¶5}  Appellant had an eight-foot fence surrounding his back yard.  Appellant testified he would leave the back door open, and the dogs came and went "whenever they wanted," until it got cold out.  Bella and the other dogs slept "wherever they wanted," with Bella usually sleeping with appellant and Regina in the bed. Bella was muzzled when she was in the home, and was placed in a cage in the living room when she ate.  Regina gave the dog Xanax from the vet to help keep her calm.

{¶6}  Regina told appellant Bella never attacked anyone but her.  Appellant never saw the dog act aggressively towards anyone other than Regina.  Appellant witnessed Bella attack Regina once prior to the incident at issue in this case.  Appellant told Regina she needed to get rid of the dog, but Regina did not want to.  It was approximately two weeks after Bella bit Regina that Bella bit appellant.  During these two weeks, Bella remained in appellant's house with his permission.  However, appellant told Regina she needed to find another place for the dog.  Regina informed appellant that appellee would not let Bella in his home.

{¶7}  The incident occurred on December 1, 2021.  When appellant arrived home from work, he and Regina sat on the couch with the dogs, watching television.  Regina got up from the couch.  Bella rose up, and appellant felt Bella was going to attack Regina.  Thus, appellant grabbed Bella by the neck, picked Bella up, and tried to put her into her cage.  Appellant did get Bella into her cage, but she jumped out of the cage and was nibbling at his foot while the muzzle was still on.  Appellant does not know how it happened, but the muzzle came off the dog.  Bella then jumped on appellant and grabbed him.  Appellant began "tussling" with the dog.  Appellant asked Regina to get the dog off of him.  However, Regina hit appellant with a baseball bat, appellant fell to the ground,

and the dog "had its way with [appellant]." When she hit appellant with the bat, Regina yelled that appellant "was killing her dog." At that point, the dog began biting appellant's hands.

{¶8} Appellant testified that Regina told him to tell the police that the dogs were fighting, and he broke it up. Appellant complied with Regina's request, and told the sheriff the dogs were fighting and he broke it up. Appellant had pins placed in his hand, and eventually had to have his finger amputated.

{¶9} Appellant never saw appellee exert any control over Bella. In his mind, when he was attacked, Regina was the owner of the dog. Appellant testified that no one else was taking care of the dog except Regina.

{¶10} Appellee admitted that he signed the forms to obtain licenses for the dogs, including Bella, on July 13, 2020 and January 5, 2021. The form states as follows, "I, the undersigned, owner, keeper, or harborer of the dog(s) above, declare under penalty of perjury the information is true and accurate to the best of my knowledge." Bella was living at the kennel, not at his residence, when appellee signed these license applications.

{¶11} When asked about the license applications, appellee stated, "all I did was bought licenses for all the dogs because Regina didn't have the money or the desire to buy them." Appellee continued, "I didn't know if Regina was going to come back or not. She was in and out of our house so many times. If she had come back, you know, in October or something and didn't have a license, we would get charged for it."

{¶12} On March 15, 2022, appellant filed a complaint against appellee and Regina for strict liability pursuant to R.C. 955.28, and common law negligence.

{¶13} Appellee filed a motion for summary judgment on February 22, 2023. On February 28, 2023, appellant filed a motion for partial summary judgment. The parties filed responses and replies to the motions.

{¶14} The trial court issued a judgment entry on August 25, 2023 granting appellee's motion for summary judgment and denying appellant's motion for partial summary judgment. The trial court scheduled a bench trial for the remaining defendant, Regina Centrone. Subsequently, appellant dismissed Regina Centrone from the case.

{¶15} Appellant appeals the August 25, 2023 judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶16} "I. THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT/APPELLEE ROLAND CENTRONE AND BY DENYING PLAINTIFF/APPELLANT'S MOTION FOR SUMMARY JUDGMENT."

*Summary Judgment Standard*

{¶17} Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds

can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶18} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶19} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I.

{¶20}  A plaintiff who suffers an injury as a result of a dog bite may, in the same case, pursue both a strict liability claim under R.C. 955.28, and a common law negligence claim.  *Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624.  An "owner" is the person to whom a dog belongs.  *Webb v. Prout*, 5th Dist. Richland No. 2005 CA 0124, 2006-Ohio-4792.  A "keeper" of a dog has physical control or care of the dog, even if that care and control is temporary.  *Id.*  A "harborer" of a dog is one who has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence.  *Id.*

*Strict Liability*

{¶21} In his complaint, appellant asserted a strict liability claim pursuant to R.C. 955.28.  In both his summary judgment briefing and appellate brief, appellant states he is "abandoning" the claim pursuant to R.C. 955.28.  However, since appellant did not dismiss this claim, the trial court addressed it in the summary judgment entry.

{¶22}  In an action for damages under R.C. 955.28, the plaintiff must prove: (1) ownership or keepership of the dog; (2) that the dog's actions were the proximate cause of the injury; and (3) damages.  However, a "victim who owns, keeps, or harbors a dog cannot recover for injuries inflicted by the dog on him or her" because R.C. 955.28 is "intended to protect people who are not in a position to control the dog."  *Redeye v. Belohlavek*, 8th Dist. Cuyahoga No. 87874, 2007-Ohio-85; *Kircher v. Baugess*, 12th Dist. Madison No. CA2013-03-006, 2013-Ohio-4579 (injured keepers cannot avail themselves of the strict liability protections within R.C. 955.28).  In this case, there is no dispute that appellant was a harborer and keeper of Bella because he exerted temporary control over

the dog and was in possession and control of the premises where the dog lived. Accordingly, appellant is not within the class of people that R.C. 955.28 was meant to protect. The trial court did not commit error by granting appellee's motion for summary judgment on appellant's statutory claim.

*Common Law Negligence – Dog Bite*

**{¶23}** Appellant first argues the trial court committed error in granting summary judgment for appellee because there is a genuine issue of material fact as to whether appellee was the owner of Bella based upon the fact that appellee signed the form to obtain Bella's dog license in 2021.

**{¶24}** Appellant seeks to essentially have this Court find that if an individual applies for tags for a dog, they are automatically deemed an owner of the dog. We decline to adopt such a broad rule, and find it is more appropriate to examine the facts and circumstances specific to each case. However, even if we were to find there are genuine issues of material fact due to the dog license application as to the ownership of Bella, we find appellant cannot meet the four criteria necessary for a common-law action. Accordingly, we find the trial court did not commit error in granting appellee's motion for summary judgment, regardless of whether appellee is considered an owner of Bella.

**{¶25}** Appellant additionally contends the trial court committed error in granting summary judgment because he put forth some evidence that Regina was negligent in keeping Bella. However, case law does not support appellant's interpretation of what is required to establish common law negligence in a dog bite case.

**{¶26}** The Supreme Court of Ohio addressed the standard for a common law action for bodily injuries caused by a dog in *Beckett v. Warren*, 124 Ohio St.3d 256, 2010-

Ohio-4, 921 N.E.2d 624.  In a common law action for bodily injuries caused by a dog, a plaintiff must show: (1) the defendant owned or harbored the dog; (2) the dog was vicious; (3) the defendant knew of the dog's viciousness; and (4) the dog was kept in a negligent manner after the keeper knew of its viciousness.  *Id.*

{¶27}  While appellant argues this language means that appellee himself does not have to "keep" the dog, the other language contained in the case, and the citations in the case, do not support appellant's argument.  When discussing whether a plaintiff can pursue a claim for injury both pursuant to R.C. 955.28 and common law in one case, the Supreme Court stated, "when the plaintiff pursues both a statutory and a common-law claim * * * a judge can just as easily instruct the jury that if it finds that the plaintiff proved that the defendant had knowledge of the dog's viciousness and kept the dog in a negligent manner, the jury may award * * * punitive damages under the common-law action."  *Id.* The Court clearly stated that to recover under common law, the jury must find the defendant had knowledge of the dog's viciousness and the defendant kept the dog in a negligent manner.

{¶28}  Further, in the *Beckett* case, the Supreme Court cited the *Hayes* and *McIntosh* cases.  In *Hayes*, the Ohio Supreme Court held that when it is shown that the animal was kept by the defendant after knowledge of its dangerous character has been acquired and an injury followed, there is prima facie evidence of negligence.  62 Ohio St. 161, 56 N.E. 879 (1900).  Further, the "gist of such an action * * * is the negligent failure to properly restrain the animal and to keep him so safely that he may not injure anyone who is lawfully at the place."  *Id.*   In *McIntosh*, the court held that the plaintiff has the "burden of proving that defendant had negligently kept the dog after receiving knowledge

of its vicious nature," and "the owner or harborer who knows of its vicious nature and negligently keeps it, may have assessed against him punitive damages." 81 Ohio App. 351, 77 N.E.2d 260 (1st Dist. Hamilton 1947). The Court stated the liability of the defendant in the case depended upon proof of negligence in the defendant keeping the dog after acquiring knowledge of its vicious character. *Id.* These cases demonstrate the focus is on whether the defendant, in this case appellee, negligently kept the dog after acquiring knowledge of its dangerous nature.

**{¶29}** Caselaw from this Court, and other appellate districts, confirm that under the common law theory, one of the four elements the plaintiff must prove is that the defendant was negligent in keeping the dog. *Webb v. Prout*, 5th Dist. Richland No. 2005 CA 0124, 2006-Ohio-4792; *Flint v. Holbrook*, 80 Ohio App.3d 21, 608 N.E.2d 809 (2nd Dist. Montgomery 1992) (plaintiff must show "defendant was negligent in keeping the dog"); *Brown v. Terrell*, 9th Dist. Summit No. 28845, 2018-Ohio-2503 (fourth element is "defendant's negligence in keeping the dog"); *Redeye v. Belohlavek*, 8th Dist. Cuyahoga No. 87874, 2007-Ohio-85 (plaintiff suing for damages inflicted by a dog under a negligence theory must show * * * the defendant was negligent in keeping the dog); *Schneider v. Kumpf*, 2nd Dist. Montgomery No. 26955, 2016-Ohio-5161 (must show defendant was negligent in keeping the dog); *Ward v. Humble*, 2nd Dist. Montgomery No. 29417, 2022-Ohio-3258 (under common law, a plaintiff suing for injuries inflicted by a dog must show * * * defendant was negligent in keeping the dog); *Dillon v. Ohio Department of Rehabilitation and Correction*, 10th Dist. Franklin No. 22AP-392, 2023-Ohio-942 (summary judgment affirmed because no evidence that dog was kept in a negligent manner by defendant).

{¶30} Appellant suggests that this Court, in *Darfus v. Clark*, broadened the common law liability to focus not on the negligence of the defendant, but on any "keeper." 5th Dist. Fairfield No. 12-CA-9, 2013-Ohio-563. We disagree, and find *Darfus* distinguishable from the instant case. First, in *Darfus*, liability was not at issue. Second, the facts are not similar to the facts in this case, as the defendant in *Darfus* lived with the dog and told the dog to "get him" when the plaintiff came to her property to inquire about listing the property for sale. Finally, in *Darfus*, this Court cited both *Hayes* and *McIntosh*, which demonstrate the focus is on whether the defendant, not a third party, negligently kept the dog.

{¶31} Appellant's argument regarding the fourth element of a common law negligence claim in a dog bite case is more akin to R.C. 955.28, where ownership of a dog that attacks another person resulting in injury may give rise to strict liability. However, in a common law claim, the plaintiff must demonstrate something more, i.e., that the owner knew of the dog's viciousness and that the owner kept the dog in a negligent manner.

{¶32} Under common law, the "gist of the action for injury by a dog known by its owner to be vicious is generally said to be not negligent in the manner of keeping the dog, but for keeping it at all." *Warner v. Wolfe*, 176 Ohio St. 389, 199 N.E.2d 860 (1964). A defendant "keeps" a dog by having the care, custody, or physical control over it. Thus, the question is whether appellant put forth any evidence that appellee was negligent in keeping Bella.

{¶33} Appellant was required to produce summary judgment evidence demonstrating appellee kept Bella in a negligent manner after having knowledge of her

viciousness. Appellant himself was a "keeper" of Bella at the time of the injury, as he was physically in control of the dog at the time of injury. Appellant was also a "harborer" because he was in possession and control of the premises where the dog lived and acquiesced in the dog being kept there.

{¶34} There is no evidence appellee kept the dog at all, not even in a temporary capacity, for more than two years prior to the incident. Appellee testified that from the summer of 2019 until after the incident, Bella was not in his home, and he had no physical control over the dog during that time. Appellee further stated he did not care for or have custody of Bella during those two years. Appellant testified he never saw appellee exert any control over Bella and appellant stated no one else was taking care of the dog except Regina. The testimony is undisputed that appellee had not exerted any temporary physical care or control of Bella for over two years prior to the incident. Because appellant set forth no summary judgment evidence demonstrating appellee kept the dog in a negligent manner, the trial court did not commit error in granting appellee's motion for summary judgment and denying appellant's motion for partial summary judgment.

{¶35} Based on the foregoing, appellant's assignment of error is overruled.

{¶36} The August 25, 2023 judgment entry of the Stark County Court of Common Pleas is affirmed.


By Gwin, J.,

Delaney, P.J., and

Baldwin, J., concur.