[Cite as *Dilgard v. McKinniss*, 2024-Ohio-1106.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

PAMELA DILGARD, ET AL.,

      PLAINTIFFS-APPELLANTS,

  v.

COREY MCKINNISS, ET AL.,

      DEFENDANTS-APPELLEES.

CASE NO. 5-23-36

O P I N I O N

Appeal from Hancock County Common Pleas Court
Trial Court No. 2021 CV 00139

Judgment Affirmed

Date of Decision: March 25, 2024

APPEARANCES:

    *Andrea R. Young* for Appellants

    *Dalton J. Smith* for Appellees

**WILLAMOWSKI, P.J.**

**{¶1}** Plaintiffs-appellants Pamela L. Dilgard ("Pamela") and Steven W. Dilgard ("Steven") (collectively "the Dilgards") appeal the judgment of the Hancock County Court of Common Pleas, arguing that the trial court erred in granting summary judgment in favor of defendants-appellees Arnold C. McKinniss ("Arnold") and Bonnie J. McKinniss ("Bonnie"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

**{¶2}** The Dilgards are a married couple who live roughly one block away from where Arnold's grandson, Corey J. McKinniss ("Corey"), resides on Center Street. Arnold and Bonnie own the house where Corey lives alone. The year after he moved into this house, Corey got two white dogs named Gator and Kora in 2018.

**{¶3}** On January 18, 2021, Pamela took her dog on a walk. As she was passing Corey's house on the sidewalk, she saw a white dog come running towards her from Corey's backyard. Pamela testified that the white dog attacked her dog and that she screamed in response.[1] She tried to hit and kick the white dog away from her dog. At this point, Corey opened his garage door where he was with Kora.

---

[1] Corey indicated that Gator was the first dog to run towards Pamela.

{¶4} Corey observed Kora go over to where Pamela was located. He then crossed his driveway and attempted to separate the dogs. Corey sought to shield Pamela's dog while he called for another neighbor to help get Gator and Kora back into the house. In this process, Pamela's left thumb was bitten, and she was knocked to ground.

{¶5} While the dogs were being separated, Pamela's dog came out of its harness. Upon getting loose, Pamela's dog began to run to where the Dilgards lived. Pamela then ran after her dog. After Pamela reached her house, Steven called 9-1-1. Pamela then went to the hospital to get stiches for the laceration on her left thumb. She then took her dog to a veterinarian for a regular checkup, but her dog did not need any stiches as the result of the incident.

{¶6} On May 18, 2021, the Dilgards filed a complaint that named Corey, Arnold, and Bonnie as defendants. On March 28, 2022, Arnold and Bonnie filed a motion for summary judgment, arguing that they did not have substantial control of the premises and could not, therefore, be held liable in this case. On August 2, 2022, the trial court issued a decision that granted summary judgment in favor of Arnold and Bonnie.

*Assignment of Error*

{¶7} The Dilgards filed their notice of appeal on August 25, 2023 pursuant to a Civ.R. 54(B) certification of the decision granting summary judgment. On appeal, the appellants raise the following assignment of error:

-3-

**The trial court erred to the prejudice of Pamela and Steven Dilgard in granting Summary Judgment in favor of Arnold and Bonnie McKinniss and holding that they did not have substantial control of the premises and therefore were not harborers of the dogs.**

*Standard of Review*

{¶8} Appellate courts review an order granting summary judgment de novo. *James B. Nutter & Co. v. Estate of Neifer*, 3d Dist. Hancock No. 5-16-20, 2016-Ohio-7641, ¶ 5. Under Civ.R. 56, summary judgment is to be granted

> only when it is clear '(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.'

*Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47 (1978). The party that moved for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists for trial and that it is, therefore, entitled to judgment as a matter of law. *Beair v. Management & Training Corp.*, 3d Dist. Marion No. 9-21-07, 2021-Ohio-4110, ¶ 15.

{¶9} If the moving party carries its initial burden, the burden then shifts to the non-moving party to demonstrate that a dispute over a genuine issue of material fact exists for trial. *Hall v. Kosei St. Marys Corporation*, 2023-Ohio-2021, 218 N.E.3d 205, ¶ 5 (3d Dist.). To prevail, the non-moving party must do more than make mere denials but must identify specific facts that establish its position. *Durfor*

*v. West Mansfield Conservation Club*, 3d Dist. No. 8-21-26, 2022-Ohio-416, ¶ 13.

A motion for summary judgment must be granted with caution because it is a procedural device that terminates the litigation. *Williams v. ALPLA, Inc*., 2017-Ohio-4217, 92 N.E.3d 256, ¶ 6 (3d Dist.). "The court must thus construe all evidence and resolve all doubts in favor of the non-moving party * * *." *Webster v. Shaw*, 2016-Ohio-1484, 63 N.E.3d 677, ¶ 8 (3d Dist.).

*Legal Standard*

**{¶10}** The Ohio Revised Code "imposes strict liability against particular categories of people for injuries caused by a dog, subject to certain exceptions * * *." *Purcell v. Stemen*, 2023-Ohio-4086, --- N.E.3d ---, ¶ 11 (3d Dist.). R.C. 955.28(B) reads, in its relevant part, as follows:

> The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit criminal trespass or another criminal offense other than a minor misdemeanor on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense other than a minor misdemeanor against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property.

Thus, pursuant to R.C. 955.28(B), "the plaintiff must prove (1) ownership or keepership [or harborship] of the dog, (2) that the dog's actions were the proximate cause of the injury, and (3) the damages." (Brackets sic.) *Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624, ¶ 11.

**{¶11}** Further, "[a] plaintiff may, in the same case, pursue a claim for a dog bite injury under both R.C. 955.28 and common-law negligence." *Beckett* at syllabus.

> In a 'common law action for bodily injuries caused by a dog, a plaintiff must show that (1) the defendant owned or harbored the dog, (2) the dog was vicious, (3) the defendant knew of the dog's viciousness, and (4) the dog was kept in a negligent manner after the keeper knew of its viciousness.'

*Vallejo v. Haynes*, 2018-Ohio-4623, 124 N.E.3d 322, ¶ 14 (10th Dist.), quoting *Beckett* at ¶ 7. Thus, a plaintiff can establish the first element of a statutory claim or common law claim for a dog-bite by demonstrating that a defendant is a harborer of the dog. *Beckett* at ¶ 7, 11.

**{¶12}** "An 'owner' is the person to whom the dog belongs." *Kehres v. Auck*, 3d Dist. Crawford No. 3-06-02, 2006-Ohio-4839, ¶ 17. "A 'keeper' is the person who has physical care or charge of the dog." *Id.* "[A] 'harborer' is one who 'has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence.'" *Id.*, quoting *Flint v. Holbrook*, 80 Ohio App.3d 21, 25, 608 N.E.2d 809 (2d Dist. 1992). Thus, "[t]o determine whether a person is a 'harborer' of a dog, 'the focus shifts from possession and control over the dog to possession and control of the premises where the dog lives.'" *Vallejo*, *supra*, at ¶ 15, quoting *Hilty v. Topaz*, 10th Dist. Franklin No. 04AP-13, 2004-Ohio-4859, ¶ 8.

**{¶13}** "Typically, a landlord out of possession and control of the premises where the dog lives is not a harborer of a tenant's dog." *Williams v. Buchner*, 2023-

Ohio-1293, 217 N.E.3d 33, ¶ 13 (8th Dist.). "Absent a contrary agreement, a lease agreement transfers both the possession and control of the premises to the tenant." *Morris v. Cordell*, 1st Dist. Hamilton No. C-150081, 2015-Ohio-4342, ¶ 11. "When the property at issue consists of a single-family residence situated on a normal-sized city lot, there is a presumption that the tenants possess and control the entire property." *H.W. v. Young*, 2020-Ohio-1834, 153 N.E.3d 807, ¶ 24 (8th Dist.), quoting *Brown v. Terrell*, 2018-Ohio-2503, 114 N.E.3d 783, ¶ 13 (9th Dist.).

**{¶14}** Under Ohio law, "the mere fact that the landlord has control over whether a dog is allowed to live on the premises with its owners is not sufficient to transform a landlord into a harborer." *Williams* at ¶ 13.

> To hold otherwise 'would be ignoring the necessary possession element to being a harborer and would be creating a fiction that a landlord retains day-to-day control over a dog despite not being present at or in possession of the premises on which the dog lives.'

*Id.*, quoting *Ward v. Humble*, 2d Dist. Montgomery No. 29417, 2022-Ohio-3258, ¶ 15. Similarly, "a landlord's knowledge that the tenant is keeping a dog on the leased premises, standing alone, does not support a finding that the landlord harbored the dog * * *." *Coontz v. Hoffman*, 10th Dist. Franklin No. 13AP-367, 2014-Ohio-274, ¶ 24.

**{¶15}** "A landlord is not deemed to be in possession and control of the premises simply because she retains the right to inspect them." *Brown* at ¶ 13. Further,

> Courts have further stated that 'routine and common acts conducted by a landlord, such as making repairs, paying taxes, insuring the structure, and the like, do not constitute the control necessary to establish liability.' *Morris* at ¶ 14.

(Citation omitted.) *Brown* at ¶ 13. "Generally, '[t]o possess a property means to use or occupy it.'" *E.F. v. Seymour*, 2018-Ohio-3946, 120 N.E.3d 459, ¶ 19 (10th Dist.), quoting *Parker v. Sutton*, 72 Ohio App.3d 296, 298, 594 N.E.2d 659 (6th Dist. 1991). "Furthermore, the hallmark of control is the ability to admit or exclude others from the property." *E.F.* at ¶ 19, quoting *Engwert-Loyd v. Ramirez*, 6th Dist. No. L-06-1084, 2006-Ohio-5468, ¶ 11.

*Legal Analysis*

{¶16} The appellants argue that the trial court erred in concluding that the appellees did not have possession and control of the premises where Corey lived and could not, therefore, be considered harborers of Corey's dogs. However, the record establishes that Arnold and Corey had a landlord-tenant relationship. In this case, Corey testified that he is a tenant living on a property owned by his grandfather. While Corey did not regularly pay rent, he stated that an agreement existed between him and Arnold under which he (Corey) mows the grass, shovels the snow, and pays the utilities while he lives in the house. *See Brown*, *supra*, at ¶ 12. Corey also testified that he conducted day-to-day maintenance and generally paid for repairs on the property. *See Ramsdell v. Ramsdell*, 6th Dist. Lucas No. L-12-1113, 2013-Ohio-409, ¶ 14; *Morris*, *supra*, at ¶ 14.

{¶17} Further, the evidence in the record indicates that, as a tenant, Corey had possession and control of the premises. Corey indicated that he lived alone at the property. Arnold testified that he has never lived or even stayed overnight at the Center Street property. Corey testified that Arnold and Bonnie did not impose any restrictions on the property aside from the general expectation that he was to take care of the premises. Corey also indicated that, except for having the ability to make major changes to the property, he lives as though he is the owner of the house. Bonnie testified that Corey does not have to ask them permission for any of his activities on the Center Street property. Similarly, Arnold stated that Corey can "basically do what he wants" with the house. (Arnold Depo. Tr. 12).

{¶18} Arnold further stated that he did not impose any restrictions against having dogs on the property. Corey affirmed that he "notif[ied]" Arnold that he was getting the dogs and that he did not ask his grandparents for permission to get the dogs. (Corey Depo. Tr. 15, 97-98). He also affirmed that Bonnie objected to the idea of him getting dogs and stated that Arnold "kind of" objected to this idea. However, Corey indicated that he proceeded to get the dogs and stated that neither Arnold nor Bonnie tried to stop him, even though they were not pleased about his decision.

{¶19} Corey also testified that he decides who comes onto the property and that his grandparents have no control over who enters the premises where he lives. *See Green*, *supra*, at ¶ 48. *See also Pangallo v. Adkins*, 12th Dist. Clermont No.

CA2014-02-019, 2014-Ohio-3082, ¶ 17; *E.F*., *supra*, at ¶ 19.  He also testified that

does not ask his grandparents for permission before inviting others into the house.

In response to this testimony, the Dilgards argue that Corey did not have exclusive

possession and control of the premises because Bonnie and Arnold would visit him

at the Center Street house or would come to the property unannounced.

**{¶20}** Bonnie testified that, while she has been to the Center Street house,

she had not been inside the house for roughly one year before the incident.  Arnold

testified that he would stop by the Center Street house about four times a month to

see "if he [Corey] was around" and to check on the condition of the property.

(Arnold Depo. Tr. 15).  *See Brown, supra*, at ¶ 13 ("A landlord is not deemed to be

in possession and control of the premises simply because she retains the right to

inspect them."); *Green v. Zack*, 5th Dist. Richland No. 2019 CA 0057, 2019-Ohio-

4944, ¶ 3, 48 (concluding that a landlord-father who visited his tenant-daughter's

house weekly did not have possession or control of the property where the daughter

lived).

**{¶21}** Corey similarly testified that Arnold would often stop by to hang out

or examine the property.  The depositions indicate that Arnold would, at times, be

at the Center Street house when Corey was not present.  However, Corey explained,

"I am the oldest grandson and they [Bonnie and Arnold] played more of a parent

role in my life than my parents have."  (Corey Depo. Tr. 13).  He stated that his

grandparents could come to the Center Street house.  *E.F*., *supra*, at ¶ 30 (finding

that a landlady-mother did not have possession and control of the premises where she had the "ability to visit the home" of her tenant-daughter).

**{¶22}** Having examined the contents of the record, we conclude that the visits from his grandparents are not inconsistent with Corey having possession and control of the premises. The Dilgards have failed to establish that a genuine issue of material fact exists for trial as to whether Arnold and Bonnie were harborers of the dogs. Thus, we do not conclude that the trial court erred in granting summary judgment in favor of the appellees. Accordingly, the sole assignment of error is overruled.

*Conclusion*

**{¶23}** Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment of the Hancock County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**