OPINION
{¶ 1} Plaintiffs-appellants, Walter and Cheryl Richeson, appeal the decision of the Warren County Court of Common Pleas granting summary judgment to defendant-appellee, Delores Keller, in a personal injury action involving a dog attack.[1] For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} Appellee is the owner of a single-family residence located on State Route 48 in *Page 2 
Maineville, Ohio. In February 2002, Corey Leist[2] rented the residence from appellee pursuant to a written lease. At the time he entered into the lease agreement with appellee, Leist owned a Rottweiler dog, which he kept at the residence. Appellee was aware that Leist had a dog at the time she entered into the lease agreement with him, and permitted him to keep a dog at the residence under the terms of the lease.
 {¶ 3} On October 8, 2003, Mrs. Richeson, was walking her own dog near the subject residence when she was attacked by Leist's Rottweiler. Mrs. Richeson was walking along the sidewalk in front of a local bank, located on State Route 48 next to the subject residence, when the Rottweiler suddenly ran from the unfenced yard of the residence, crossed over the bank's property, and knocked her to the ground. It is undisputed that the premises where the attack occurred was not owned, occupied or controlled by appellee. As a result of the incident, Mrs. Richeson sustained injuries to her back, neck, shoulders and legs.
 {¶ 4} Accordingly, on March 1, 2005, appellants filed a complaint against appellee, alleging both strict liability and common law negligence claims.[3] On April 5, 2005, appellee moved for summary judgment as to all such claims, arguing she was not liable for Mrs. Richeson's injuries because she was not the owner, keeper or harborer of the Rottweiler. On July 15, 2005, the trial court granted summary judgment to appellee on the basis she did not "harbor" the subject dog, and therefore, could not be held liable for Mrs. Richeson's injuries under either a common law or strict liability theory of recovery. Appellants now appeal the trial court's decision, raising one assignment of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED IN GRANTING [DEFENDANT/APPELLEE'S] *Page 3 
MOTION FOR SUMMARY JUDGMENT."
 {¶ 7} In their sole assignment of error, appellants argue the trial court erred in granting summary judgment to appellee on their common law claim where they established appellee had knowledge of the dog's dangerousness and failed to take any action to confine or remove the dog from the premises. In addition, appellants argue the trial court erred in granting summary judgment to appellee on their statutory claim because issues of fact exist as to whether appellee was a "harborer" of the subject dog. Because a determination of whether summary judgment is appropriate as to either claim depends upon whether appellee was a "harborer" of the subject dog, we address both claims together.
 {¶ 8} We review a trial court's decision granting summary judgment de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Pursuant to Civ.R. 56, summary judgment is appropriate "when looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears form the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party." Horton v. Harwick Chem. Corp.,73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v.Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107.
 {¶ 9} If the moving party "satisfies this initial burden by presenting or identifying appropriate Civ.R. 56(C) evidence," the nonmoving party "must then present similarly appropriate evidence to rebut the motion with a showing that a genuine issue of material fact must be preserved for trial." Morning View Care Ctr.-Fulton v. Ohio Dept. of HumanServs., 148 Ohio App.3d 518, 2002-Ohio-2878, at ¶ 39. "The nonmoving party does not need to try *Page 4 
its case at this juncture, but it must produce more than a scintilla of evidence in furtherance of its claims." Id.
 {¶ 10} In Ohio, "a suit for damages resulting from dog bites can be instituted under both statute and common law." Thompson v. Irwin (Oct. 27, 1997), Butler App. No. CA97-05-101, at 4, citing Warner v.Wolfe (1964), 176 Ohio St. 389, 393. R.C. 955.28(B) imposes strict liability upon an owner, keeper, or harborer of a dog "for any injury, death, or loss to person or property that is caused by the dog." Id. Accordingly, the trier of fact must determine three issues to impose strict liability: "(1) whether one is the owner, keeper, or harborer of the dog; (2) whether the actions of the dog were the proximate cause of damage; and (3) the monetary amount of damage." Id., citingHirschauer v. Davis (1955), 163 Ohio St. 105, 109. Summary judgment is appropriate where no genuine issue of material fact exists as to either of the first two issues. Id.
 {¶ 11} To maintain a common law cause of action for personal injury resulting from a dog attack, a plaintiff must establish that the defendant "owned or harbored the dog, that the dog was vicious, that the defendant knew of the dog's viciousness, and that the defendant was negligent in keeping the dog," along with proximately resulting damages.Jowers v. Eastgate Village, Ltd. (June 7, 1999), Clermont App. No. CA98-10-095, at 4, quoting Flint v. Holbrook (1992), 80 Ohio App.3d 21,25-26. On appeal, appellants do not contend appellee was an "owner" or "keeper" of the dog in question, but rather, that she "harbored" the dog such that liability under both theories of recovery is warranted.
 {¶ 12} In determining whether a defendant is a "harborer" of a dog, the central focus of a court's analysis "shifts from possession and control over the dog to possession and control of the premises where the dog lives." See Jones v. Goodwin, Hamilton App. No. C-050468,2006-Ohio-1377, ¶ 6, quoting, Flint, 80 Ohio App.3d at 25. "[A] harborer is one who is in possession and control of the premises where the dog lives, and silently acquiesces in the *Page 5 
dog's presence." Flint.
 {¶ 13} With respect to landlord-tenant relationships, it is well-established that a lease transfers both possession and control of the leased premises to the tenant. See id. See, also, Riley v.Cincinnati Metro. Hous. Auth. (1973), 36 Ohio App.2d 44, 48. Accordingly, "a landlord's liability as a harborer for injuries inflicted by a tenant's dog is limited to those situations in which the landlord permitted the tenant's dog in common areas" of the landlord's property. Jowers at 6. Notably, Ohio courts have previously held that where the leased property at issue consists of a single-family residence situated on a "normal-sized city lot, there is a presumption that the tenants possessed and controlled the entire property." SeeEngwert-Loyd v. Ramirez, Lucas App. No. L-06-1084, 2006-Ohio-5468, ¶ 11. (Emphasis added). "In a situation involving a landlord and a tenant, a landlord cannot be a harborer of a dog that is kept on premises that the tenant has sole control over." See Jones, Hamilton App. No. C-050468, 2006-Ohio-1377, at ¶ 6.
 {¶ 14} Here, our review of the record indicates that Leist rented the single-family residence at issue from appellee, and was in sole possession and control of the property throughout his tenancy. Appellee testified that she leased the property to Leist unfurnished and did not keep any personal items anywhere on the premises. In fact, appellee testified that she never lived at the subject residence, but rather, began renting the property to various tenants after she acquired the property from a relative. Moreover, appellee indicated that Leist was responsible for paying the electric, gas and water bills, along with insuring the contents of the home and maintaining the yard.
 {¶ 15} While appellants argue appellee retained control over the property because she insured the structure, received tax bills for the property, had the authority to approve or disapprove any structural changes, was responsible for making repairs, and had the power to evict Leist, we find no authority for the proposition that such routine and common acts by a *Page 6 
landlord constitute "control" for purposes of liability in tort. "The control necessary as the basis for liability in tort implies the power and the right to admit people to [an area on the leased premises] and to exclude people from it." Cooper v. Rose (1949), 151 Ohio St. 316, 319. Having leased the residence to Leist, appellee clearly surrendered this power and right at the time she entered into the lease with him. Accordingly, we find no merit in appellants argument that appellee retained sufficient control over the leased premises to support a finding she was a "harborer" of Leist's dog.
 {¶ 16} Notwithstanding the foregoing, appellants contend the trial court erred in finding appellee was not a "harborer" because appellee knew Leist kept a dog on the premises and neglected to take notice of the dog's "vicious and dangerous habits." In making this argument, appellants submit that appellee had "a duty * * * to prevent harm to others by the tenant's dog" due to a "special relationship" between appellee and Leist. Appellants cite this court's decision in Bundy v.Sky Meadows Trailer Park (Oct. 23, 1989), Butler App. No. CA89-01-002, as authority for this proposition. We, however, find Bundy is inapposite here.
 {¶ 17} In Bundy, this court found that a trailer park owner had a duty to enforce established park rules prohibiting animals from running at large because the park owner had prior knowledge of recurring problems involving a particular park tenant's dog. See id. The subject dog had a history of running loose and biting children, which was known to the park owner prior to the dog attacking the plaintiff. See id. Because the dog attack occurred in a common area of the trailer park, after the owner had been placed on notice of the dog's propensities, this court found liability could be predicated on the park owner's acquiescence in keeping or allowing the dog in common areas. See id. See, also,Jowers, Clermont App. No. CA98-10-095, at 8.
 {¶ 18} In this case, however, the attack did not occur in a common area of the leased premises, or on the leased premises at all. The record indicates that the Rottweiler ran from *Page 7 
the subject property, crossed over the property of a local bank, and attacked Mrs. Richeson on the sidewalk adjacent to the bank. It is undisputed that appellee did not own, occupy or control the location at which the dog attack occurred. Further, the leased premises from which the dog ran did not have "common areas" Leist shared with other tenants or appellee, such as those at issue in Bundy. As stated, the property consisted of a single-family dwelling occupied by only one tenant, and over which the tenant had sole control.
 {¶ 19} Moreover, unlike the park owner in Bundy, our review of the record in this case yields no evidence that appellee had prior knowledge of the dog's alleged vicious or dangerous propensities. Appellee testified during her deposition that she never saw the dog in question prior to the incident, was not aware of the breed of dog prior to the incident, and had no knowledge as to whether the dog had been involved in similar attacks prior to the incident. In fact, there is no evidence in the record indicating that appellee was ever made aware of any incidents involving the dog prior to this incident. Although appellee acknowledged that "all dogs can be dangerous" regardless of their size or breed, such a generalized awareness does not establish she was aware of the Rottweiler's alleged vicious and dangerous propensities.
 {¶ 20} Appellants offer the affidavits of two bank employees as evidence that the dog's alleged aggressive behavior was a matter of "common knowledge" in the neighborhood. Appellants argue appellee should have known of the dog's alleged vicious and dangerous habits based upon these affidavits, coupled with the facts she lived in close proximity[4] to the residence, utilized a bank located in the same neighborhood as the residence, and regularly passed the property both walking and driving.
 {¶ 21} These affidavits standing alone, however, do not create a genuine issue of *Page 8 
material fact as to whether appellee had knowledge of the dog's behavior or alleged dangerous or vicious propensities. As an initial matter, the affidavits do not establish the dog was dangerous or vicious, but rather, simply state the dog displayed "aggressive" behavior, such as running loose, barking and growling.[5] There is no evidence indicating that the dog chased, approached or attacked any person, or bit or attempted to bite any person prior to this incident.
 {¶ 22} Further, our review of these affidavits indicates that the two employees themselves observed the dog was not confined to the premises and displayed "aggressive behavior," on the occasions they saw the animal.[6] There is nothing in the affidavits, or anywhere else in the record, suggesting that appellee observed the dog's behavior, that neighbors complained to police or appellee regarding the dog's behavior, or that appellee was otherwise made aware of the dog's behavior.
 {¶ 23} Moreover, despite appellant's contentions, we find it is too speculative to conclude appellee should have known of the dog's behavior based upon the facts she lived in close proximity to the residence, passed the residence regularly and used the bank located *Page 9 
next to the residence. See Goodin v. Kroger Co. (June 21, 1993), Butler App. No. CA93-01-009, citing Parras v. Standard Oil Co. (1953),160 Ohio St. 315, paragraph two of the syllabus, ("an inference of negligence does not arise from mere guess, speculation, or wishful thinking, but rather can arise only upon proof of some fact from which such inference can reasonably be drawn").
 {¶ 24} Because we find no evidence in the record demonstrating a genuine issue of material fact exists as to whether appellee harbored the subject dog, or harbored the dog with knowledge of its dangerous propensities, we find summary judgment is warranted in favor of appellee as to both appellants' statutory and common law claims. Accordingly, appellants sole assignment of error is overruled.
 {¶ 25} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar.
[2] Corey Leist is a co-defendant in this case but is not involved in this appeal.
[3] Mr. Richeson also asserted a loss of consortium claim against appellee, which is not at issue in this appeal.
[4] The record indicates that appellee lived approximately one mile from the property.
[5] R.C. 955.11 provides in relevant part: "(1)(a) "Dangerous dog" means a dog that, without provocation * * * has chased or approached in either a menacing fashion or an apparent attitude of attack, or has attempted to bite or otherwise endanger any person, while that dog is off the premises of its owner, keeper, or harborer and not under the reasonable control of its owner, keeper, harborer, or some other responsible person, or not physically restrained or confined in a locked pen which has a top, locked fenced yard, or other locked enclosure which has a top. * * * (2) "Menacing fashion" means that a dog would cause any person being chased or approached to reasonably believe that the dog will cause physical injury to that person. * * * (4)(a) "Vicious dog" means a dog that, without provocation * * * meets any of the following: (i) Has killed or caused serious injury to any person; (ii) Has caused injury, other than killing or serious injury, to any person, or has killed another dog. (iii) Belongs to a breed that is commonly known as a pit bull dog. The ownership, keeping, or harboring of such a breed of dog shall be prima-facie evidence of the ownership, keeping, or harboring of a vicious dog."
[6] The affidavit of Amanda Powell states in relevant part: "On every occasion that I observed the Rottweiler, I observed that it was not confined to the premises * * *. It was common knowledge that the Rottweiler was not confined to the premises * * * and was permitted to roam the neighborhood. I personally observed the Rottweiler on a number of occasions barking, growling, and displaying other aggressive behavior." Similarly, the affidavit of Deborah Tooley states in relevant part: "On a number of occasions * * * I observed the Rottweiler was not confined to the premises * * *. It was common knowledge at [the bank] and in the surrounding neighborhood that the Rottweiler was not confined to the premises * * *. When I saw the Rottweiler roaming the neighborhood, it displayed aggressive behavior." *Page 1