[Cite as *Pangallo v. Adkins*, 2014-Ohio-3082.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| JOSEPH PANGALLO, | : | |
| | | CASE NO. CA2014-02-019 |
| Plaintiff-Appellant, | : | |
| | | O P I N I O N |
| | : | 7/14/2014 |
| - vs - | | |
| | : | |
| JENNIFER ADKINS, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012-CVC-1526

Robert L. Poole, 2656 Crescent Springs Road, Suite 1, Crescent Springs, KY 41017, for plaintiff-appellant

Jennifer Adkins, 1024 Old State Route 74, Batavia, Ohio 45103, defendant, pro se

Molly G. Vance, 36 East Seventh Street, Cincinnati, Ohio 45202, for defendant-appellee, Charles Ludwig

**S. POWELL, J.**

{¶ 1} Plaintiff-appellant, Joseph Pangallo, appeals from the decision of the Clermont County Court of Common Pleas granting summary judgment to defendant-appellee, Charles Ludwig. For the reasons outlined below, we affirm.[1]

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar.

**Facts and Procedural History**

{¶ 2} On the afternoon of August 22, 2011, Pangallo, a police officer with the Union Township Police Department, along with his partner, Officer Alex Koszo, were dispatched to 1024 Old State Route 74, Batavia, Clermont County, Ohio, to serve a warrant on Jennifer Adkins. The property consists of a two-story building housing two rental units with an adjoining parking lot and yard. At that time, Adkins lived in the upstairs apartment with her young son and dog, whereas the first floor unit was leased out as office space for a local business. The property is owned by Ludwig, who serves as the landlord for both units. It is undisputed that Ludwig maintains a shed on the far side of the property.

{¶ 3} After arriving at the property, Pangallo and Koszo approached the lone staircase leading to Adkins' second-floor apartment. At that same time, Adkins was preparing to open the door to let her dog out to use the restroom. According to Adkins, after she opened the door, the dog broke free from her hold and went outside and down the stairs. Upon reaching the bottom of the staircase, the dog looked up and noticed Pangallo and Koszo approaching from a distance of approximately three to four feet. As Pangallo testified during his deposition, "[i]t got to the bottom of the steps and of course it saw me at that point and it began to bark and then it jumped up on me, on my shoulder."

{¶ 4} With the dog barking and pawing at his chest, Pangallo attempted to reach his baton, but was ultimately unsuccessful. Seeing his partner in danger, Koszo removed his service weapon and fired a single round into the dog. The bullet went through the dog and struck Pangallo in the right ankle. The dog subsequently died. Pangallo was then taken to the hospital and treated for his ankle wound. As a result of the gunshot wound, Pangallo missed approximately one month of work.

{¶ 5} On August 2, 2012, Pangallo filed suit against Adkins and Ludwig alleging

claims under both R.C. 955.28(B) and common law negligence. In response, Ludwig filed an answer and later a motion for summary judgment. As part of his motion, Ludwig argued that because he was not the owner, keeper, or harborer of the dog, he could not be held liable for Pangallo's ankle injury. The trial court agreed and granted Ludwig's motion for summary judgment in its entirety. The trial court also found that, even though Pangallo's claims against Adkins remained pending, its decision constituted a final appealable order as there was no just reason for delay pursuant to Civ.R. 54(B).

{¶ 6} Pangallo now appeals from the trial court's decision granting summary judgment to Ludwig, raising a single assignment of error for review.

{¶ 7} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, CHARLES LUDWIG.

{¶ 8} In his single assignment of error, Pangallo argues the trial court erred by granting summary judgment to Ludwig. We disagree.

{¶ 9} Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Moody v. Pilot Travel Ctrs., L.L.C.*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 7, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998). In applying the de novo standard, the appellate court is required to "us[e] the same standard that the trial court should have used, and * * * examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.), quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997).

{¶ 10} Pursuant to Civ.R. 56, a trial court may grant summary judgment only when (1)

there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.). The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is met, the nonmoving party must then present evidence to show that there is some issue of material fact yet remaining for the trial court to resolve. *Smedley v. Discount Drug Mart, Inc.*, 190 Ohio App.3d 684, 2010-Ohio-5665, ¶ 11 (12th Dist.). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10.

### Pangallo's Claim Brought Pursuant to R.C. 955.28(B) Must Fail as Ludwig was Not an Owner, Keeper or Harborer of Adkins' Dog

{¶ 11} In Ohio, "a suit for damages resulting from dog bites can be instituted under both statute and common law." *Thompson v. Irwin*, 12th Dist. Butler No. CA97-05-101, 1997 WL 666079, *3 (Oct. 27, 1997), citing *Warner v. Wolfe*, 176 Ohio St. 389 (1964). To that end, Pangallo initially argues the trial court erred by granting summary judgment to Ludwig on his claim brought under R.C. 955.28(B). Pursuant to that statute, "the owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog[.]" In turn, "in an action for damages under R.C. 955.28(B), a plaintiff must prove (1) ownership, keepership, or harborship of the dog, (2) the actions of the dog were the proximate cause of damage, and (3) the monetary amount of damages." *Diaz v. Henderson*, 12th Dist. Butler No. CA2011-09-182, 2012-Ohio-1898, ¶ 11.

{¶ 12} It is undisputed that Ludwig was neither the owner nor keeper of Adkins' dog. Rather, the only issue on appeal is whether Ludwig was a harborer of the dog, thereby subjecting him to potential liability. "In determining whether a defendant is a harborer of a dog, the central focus of a court's analysis 'shifts from possession and control over the dog to possession and control of the premises where the dog lives.'" *Jones v. Holmes*, 12th Dist. Butler No. CA2012-07-133, 2013-Ohio-448, ¶ 11, quoting *Flint v. Holbrook*, 80 Ohio App.3d 21, 25 (2d Dist.1992); *Good v. Murd*, 6th Dist. Lucas No. L-13-1235, 2014-Ohio-2216, ¶ 10. As a result, "[i]n order to be a harborer, a person must have possession and control of the premises *where the dog lives*, and silently acquiesce in the dog being kept there by its owner." (Emphasis sic.) *Holmes* at ¶ 14.

{¶ 13} It is well-established that a lease transfers both possession and control of the leased premises to the tenant. *Richeson v. Leist*, 12th Dist. Warren No. CA2006-11-138, 2007-Ohio-3610, ¶ 13. In turn, "[i]n a situation involving a landlord and a tenant, a landlord cannot be a harborer of a dog that is kept on premises that the tenant has sole control over." *Diaz* at ¶ 14, quoting *Jones v. Goodwin*, 1st Dist. Hamilton No. C-050568, 2006-Ohio-1377, ¶ 6. In other words, for a landlord to be liable as a harborer for injuries inflicted by a tenant's dog, "the plaintiff must prove that the landlord permitted or acquiesced in the tenant's dog being kept in the common areas or areas shared by the landlord and tenant." *Stuper v. Young*, 9th Dist. Summit No. 20900, 2002-Ohio-2327, ¶ 13.

{¶ 14} In this case, Pangallo argues there "can be no doubt that the dog bite occurred in a common area shared between the tenants and landlord Ludwig."[2] However, contrary to Pangallo's claim otherwise, the record is clear that the incident did not occur in any common area shared by Adkins and Ludwig, but rather, at the bottom of the lone staircase leading up

---

2. We note that the record is devoid of any evidence that the dog ever bit Pangallo. In fact, Pagnallo himself even testified as part of his deposition that he was not bitten or even scratched by the dog.

to Adkins' second-floor apartment. The staircase, just as the apartment itself, is an area where Adkins exhibited sole possession and control.

{¶ 15} As this court has stated previously, "[t]he control necessary as the basis for liability in tort implies the power and right to admit people to an area on the leased premises and to exclude people from it." *Richeson*, 2007-Ohio-3610 at ¶ 15, quoting *Cooper v. Rose*, 151 Ohio St. 316, 319 (1949). In other words, the hallmark of control is the ability to admit or to exclude others from the property. *Kovacks v. Lewis*, 5th Dist. Tuscarawas No. 2010 AP 01 0001, 2010-Ohio-3230, ¶ 27; *Hill v. Hughes*, 4th Dist. Ross No. 06CA2917, 2007-Ohio-3885, ¶ 17. Ludwig, however, never exhibited such control. In fact, when specifically asked about his control over the property, Ludwig testified:

> I don't know that I maintain, you know, maintain control. I'm the owner, but other than that, physically I did not maintain anything as far as, you know, controlling who came and went and so on and so forth.

{¶ 16} Therefore, because the incident did not occur in a common area shared by Adkins and Ludwig, and because Adkins had sole control and possession of the property where her dog lived, we find Ludwig simply cannot be considered a harborer of the dog subject to liability under R.C. 955.28(B) as a matter of law. *See, e.g., Goodwin*, 2006-Ohio-1377 (finding dog was not kept in shared area or in area over which landlords had possession and control, landlords were not harboring the dog owned by tenant, and were not liable to victim for plaintiff's injuries); *Webb v. Prout*, 5th Dist. Richland No. 2005 CA 0124, 2006-Ohio-4792 (finding no liability to landlord where there was no evidence that the landlord had possession or control of either the premises where the dog bites occurred, or the premises where the dog was kept); *Hilty v. Topaz*, 10th Dist. Franklin No. 04AP-13, 2004-Ohio-4859 (even if the property owner knew that tenants kept the dog that attacked plaintiff at the leased premises, the property owner was not a harborer of the tenant's dogs absent

evidence that the owner had possession and control of the property); *Burrell v. Iwenofu*, 8th Dist. Cuyahoga No. 81230, 2003-Ohio-1158 (landlord did not retain possession and control of backyard common area in which tenant was bitten by dog, and therefore, could not be considered a harborer of the dog).

{¶ 17} Nevertheless, Pangallo argues that because there is a dispute as to whether Ludwig mowed the yard where the dog used the restroom and where Adkins occasionally attached the dog to a zip line, a question of fact exists as to whether Ludwig actually retained control over the property. We find no authority for the proposition that such routine and common acts by a landlord would constitute "control" for purposes of liability in tort. *See Richeson*, 2007-Ohio-3610 at ¶ 15 (finding fact that landlord was responsible for making repairs on the property did not constitute "'control' for purposes of liability in tort"). This is true regardless of the fact that Ludwig also maintained a shed on the far side of the property. Again, "[t]he control necessary as the basis for liability in tort implies the power and right to admit people to an area on the leased premises and to exclude people from it." *Id.*, quoting *Cooper*, 151 Ohio St. at 319. As a simple reading of the record indicates, that simply did not occur here. Accordingly, Pangallo's first argument is overruled.

**Pangallo's Claim Alleging Common Law Negligence Also Fails as a Matter of Law**

{¶ 18} Next, Pangallo argues the trial court erred by granting summary judgment to Ludwig on his common law negligence claim. "Under common law, a plaintiff suing for injuries inflicted by a dog must show that the defendant owned or harbored the dog, that the dog was vicious, that the defendant knew of the dog's viciousness, and that the defendant was negligent in keeping the dog." *Diaz*, 2012-Ohio-1898 at ¶ 12, quoting *Holbrook*, 80 Ohio App.3d at 25-26. We have already determined Ludwig was not an owner or harborer of the dog. Therefore, Pangallo's common law negligence claim must also fail. Accordingly, Pangallo's second argument is likewise overruled.

**Conclusion**

**{¶ 19}** Having found no error in the trial court's decision granting summary judgment to Ludwig on Pangallo's claims alleging a violation of R.C. 955.28(B) and common law negligence, Pangallo's single assignment of error is overruled.

**{¶ 20}** Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.