[Cite as *Wilder v. Hicks*, 2025-Ohio-5275.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| CANDICE WILDER, | : | |
| Appellant, | : | CASE NO. CA2025-05-052 |
| vs. | : | OPINION AND JUDGMENT ENTRY 11/24/2025 |
| ERIC HICKS, et al., | : | |
| Appellees. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2023 09 1767

O'Connor, Acciani & Levy, LPA, and Elizabeth L. Acciani, for appellant.

Joseph P. Hoerig, for appellee, Donald Jones.

## **O P I N I O N**

**HENDRICKSON, J.**

{¶ 1} Appellant, Candice Wilder, appeals from a decision of the Butler County Court of Common Pleas granting summary judgment to appellee, Donald Jones, on her common law and statutory claims for damages related to a dog bite. For the reasons set

forth below, we affirm the judgment of the trial court.

## I. FACTS & PROCEDURAL HISTORY

{¶ 2}   The present case involves a personal injury lawsuit filed by Wilder against Jones, his deceased wife, Rita, Erick Hicks, and Leann Pickron for injuries Wilder sustained from a dog bite at 1901 Shuler Avenue, Hamilton, Ohio 45011 (hereafter, "1901 Shuler") on February 22, 2014. The property, a single-family home, was one of 15 properties owned by Jones and Rita. In February 2014, 1901 Shuler Avenue was rented to Hicks and Pickron. Hicks and Pickron owned a pit bull, named Cali, that they kept at the property.

{¶ 3}   Wilder, who was 10 years old in February 2014, lived with her mother, Edith, at a home also rented from Jones and Rita. Wilder's rental home was at 1838 Shuler Avenue, a few homes up from the home Hicks and Pickron rented. On February 22, 2014, Wilder was playing with the daughter of Hicks and Pickron at Wilder's home. The two decided to build a fort using supplies from Hicks' and Pickron's home. The daughter of Hicks and Pickron left to collect the supplies, and Wilder followed a few minutes later. As she was making her way to the backyard of 1901 Shuler Avenue, Hicks' and Pickron's son let Cali out of the house on a tie-out chain that was connected to a tree in the front yard of the property. Though Cali was on the chain prior to being let outside, the chain was long enough to allow Cali to reach Wilder. Cali attacked Wilder, knocked her to the ground, and bit her face, causing significant injuries.

{¶ 4}   Wilder filed suit against Jones, his deceased wife Rita, Hicks, and Pickron on September 5, 2023, after reaching the age of majority. Wilder asserted both a common-law negligence claim and a statutory dog-bite claim under R.C. 955.28. On

October 10, 2023, a suggestion of death was filed, informing the court and Wilder that Rita had died in December 2022. After more than 90 days passed without Wilder moving to substitute a representative of Rita's estate as a proper party, the trial court dismissed Rita from the action.

{¶ 5} The action proceeded against Hicks, Pickron, and Jones. Jones filed an answer denying the allegations in Wilder's complaint and set forth a crossclaim against Hicks and Pickron, seeking "indemnity and/or contribution" from Hicks and Pickron in the event he was found liable to Wilder on her claims. Neither Hicks nor Pickron filed an answer to Wilder's complaint or Jones' crossclaim. Wilder and Jones engaged in discovery.

{¶ 6} On October 24, 2024, Jones moved for summary judgment against Wilder on both her common-law negligence and statutory dog-bite claims. Jones argued that he could not be liable under either theory of recovery as he was not a keeper, owner, or harborer of the dog. Jones supported his motion for summary judgment with deposition testimony from Wilder, Edith, and himself. While full deposition transcripts of Wilder, Edith, and Jones were filed with the trial court on October 24, 2024, none of the filed transcripts included the exhibits identified and used during the depositions.

{¶ 7} On November 4, 2024, Wilder filed her own motion for summary judgment, contending she was entitled to judgment on both her common law and statutory dog-bite claims as Jones was a "harborer" of the dog. With respect to the common-law negligence claim, Wilder further contended Jones knew the dog was vicious and yet continued to permit the dog to stay on the property. Wilder supported her motion for summary judgment with four photographs. Notably, none of the photographs were attached to an affidavit.

{¶ 8}   On November 19, 2024, Wilder filed a memorandum in opposition to Jones' motion for summary judgment. Wilder argued there was a genuine issue of material fact as to whether Jones was a harborer of the dog since there was some indication that the dog bite occurred in a common area shared by the tenants of 1901, 1903, and 1905 Shuler Avenue. That is, Wilder argued the bite occurred "in the common parking space of the three lots," which were owned by Jones and Rita and rented to various tenants. In support of her argument, Wilder relied on Jones' deposition testimony, her own deposition testimony, and a photograph she attached to her brief. The photograph was a duplicate of one of the photographs attached to her own motion for summary judgment. The photograph was not attached to an affidavit.

{¶ 9}   Jones filed a memorandum in opposition to Wilder's motion for summary judgment and a reply in support of his own motion for summary judgment. Jones argued that Wilder had presented "NO evidence of the type listed in Civ.R. 56(C) to establish that either Donald Jones or Rita Jones (deceased), owners of the single-family residence on a normal-sized lot, exercised that degree of control over the premises to establish harborer liability." He further argued that Wilder presented no evidence indicating the dog bite occurred in a "common parking space of the three lots," noting that the deposition testimony Wilder cited in her brief did not describe a parking lot or common area as the location of where the bite occurred.

{¶ 10}  On December 20, 2024, the trial court issued a decision granting summary judgment to Jones on Wilder's common-law negligence and statutory dog-bite claims and denying Wilder's motion for summary judgment. The trial court concluded Jones was not a harborer of the dog, stating, in pertinent part:

> The dog bite occurred at 1901 Shuler, a single-family residence on a normal-sized city lot. The Joneses were the owners of 1901 Shuler. Renters were renting the property from the Joneses. The Joneses only interactions with 1901 Shuler were normal and customary landlord and tenant dealings. *Wilder argues that where the attack occurred was a common parking area, this argument is without merit, it is not supported by any evidence.* The Joneses were not harborers based upon the above analysis.

(Emphasis added.) The fact that Jones was not a harborer of the dog defeated both Wilder's common-law negligence and statutory dog-bite claims. However, with respect to the common-law claim, the court further found that Jones did not know of Cali's viciousness prior to the dog's attack on Wilder. The court noted that the only evidence Wilder presented as to Jones' knowledge of Cali's viciousness or dangerous character was testimony from Edith that prior to the dog bite occurring, Edith had reported to Rita that Cali had lunged at her son Matthew. The court concluded, "[t]here is no other evidence before the court regarding the viciousness of Cali, only that the dog lunged one previous time. . . . [T]he court does not find that being notified of a lunge is knowledge of the dog's dangerous character as required by case law."

{¶ 11} Wilder appealed from the trial court's December 20, 2024 decision. However, this court dismissed the appeal for a lack of a final appealable order. *See Wilder v. Hicks,* 12th Dist. Butler 2025-01-005 (Feb. 3, 2025) (Entry of Dismissal). Thereafter, Wilder voluntarily dismissed her claims against Hicks and Pickron. On May 8, 2025, the trial court issued an amended decision granting Jones' motion for summary judgment and denying Wilder's motion for summary judgment, this time including Civ.R. 54(B) language that there was "no just reason for delay."

## II. ANALYSIS

{¶ 12} Wilder timely appealed the trial court's amended decision, raising two assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED WHEN GRANTING THE MOTION FOR SUMMARY JUDGMENT ON [WILDER'S] COMMON LAW NEGLIGENCE CLAIMS BY IMPROPERLY WEIGHING EVIDENCE, FAILING TO VIEW FACTS IN THE LIGHT MOST FAVORABLE TO [WILDER] AS THE NON-MOVING PARTY.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT ERRED WHEN GRANTING THE MOTION FOR SUMMARY JUDGMENT ON [WILDER'S] STATUTORY LAW NEGLIGENCE CLAIM.

### A. Summary Judgment Standard & Civ.R. 56 Evidence

{¶ 17} "An appellate court's examination of a trial court's decision to grant summary judgment is subject to de novo review." *French v. New Paris*, 2011-Ohio-1309, ¶ 17 (12th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). De novo review means that this court uses the same standard that the trial court should have used and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial. *Morris v. Dobbins Nursing Home*, 2011-Ohio-3014, ¶ 14 (12th Dist.).

{¶ 18} Civ.R. 56 sets forth the summary judgment standard. "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.),

citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 17 (12th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 19} The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Touhey v. Ed's Tree & Turf, LLC*, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is met, the nonmoving party "'must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium Med. Ctr.*, 2019-Ohio-447, ¶ 10 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Id*.

{¶ 20} "Civ.R. 56(C) provides an exclusive list of materials that a trial court may consider when deciding a motion for summary judgment." *State ex rel. Varnau v. Wenninger*, 2011-Ohio-3904, ¶ 7 (12th Dist.), citing *Spier v. American Univ. of the Caribbean*, 3 Ohio App.3d 28, 29 (1st Dist. 1981). Those materials are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). "[A] party may properly introduce evidence not specifically authorized by Civ.R. 56(C) by incorporating it by reference through a properly framed affidavit pursuant to Civ.R. 56(E)." *Wilson v. AIG*, 2008-Ohio-

5211, ¶ 29 (12th Dist.); *Wenninger* at ¶ 7.

{¶ 21} "'In general, no evidence or stipulation may be considered in ruling on a summary judgment motion except as stated in Civ.R. 56.'" *Fontain v. H&R Cincy Properties, L.L.C.*, 2022-Ohio-1000, ¶ 66, fn. 7 (12th Dist.), quoting *U.S. Bank Natl. Assn. v. Crow*, 2016-Ohio-5391, ¶ 18 (7th Dist.). While "it is within the trial court's discretion to consider nonconforming evidence when there is no objection"; *Auto Recyclers of Middletown, Inc. v. Stein, L.L.C.*, 2025-Ohio-414, ¶ 39 (12th Dist.); it is also "well-within [a] court's discretion to ignore documents that do not comply with Civ.R. 56." *French*, 2011-Ohio-1309, at ¶ 11 (12th Dist.). "In cases where improper Civ.R. 56(C) evidence was submitted and there was no objection by the parties, this court has found it appropriate to rely on such documents where it could be ascertained that the trial court reviewed and relied on specific documents." *Auto Recyclers* at ¶ 39, citing *Meranda Nixon Estate Wine, L.L.C. v. Cherry Fork Farm Supply Co.*, 2024-Ohio-1523, ¶ 48 (12th Dist.) (finding it appropriate to consider nonconforming summary judgment evidence where "it appear[ed] that the trial court considered" the exhibits in ruling on summary judgment, "mentioning some exhibits by name"); and *French* at ¶ 12 (finding it was appropriate to consider the nonconforming evidence that was "reviewed and considered by the trial court," but refusing to consider evidence that "the record does not specifically indicate were considered by the court in reaching its decision on summary judgment"). However, where the trial court has not referenced or mentioned its consideration of non-conforming Civ.R. 56(C) documents, we will not presume that the trial court considered such documents. "To do otherwise would presume irregularity by the trial court." *Stoll v. Gardner*, 2009-Ohio-1865, ¶ 24 (9th Dist.).

{¶ 22} In the present case, Wilder presented four black-and-white photographs in support of her own motion for summary judgment and in opposition to Jones' motion for summary judgment. Two of the four photographs were Google Map images of 1901 Shuler Avenue (Exhibits 1 and L). A third photograph purported to be an image of Wilder's facial injuries (Exhibit D), and the fourth photograph purported to be an image of 1901 Shuler Avenue with an "x" marked on it where the dog bite occurred (Exhibit A).[1] The photographs were not proper Civ.R. 56 evidence, as the photographs were not filed with the depositions and were not attached to an affidavit. *See* Civ.R. 56(C). There is no indication that the trial court considered the photographs in reviewing the parties' competing motions for summary judgment. The trial court never referenced the photographs by exhibit number nor described the photographs in its decision. As the trial court did not reference or mention its consideration of the photographs in its decision, we will not presume that the trial court considered such exhibits. *See Stoll* at ¶ 24 (noting that an appellate court will not presume irregularity by the trial court). The photographs, therefore, are not proper Civ.R. 56 evidence and will not be considered by this court on appeal.[2]

---

1. We say "purported" as the exhibits provided to the trial court in support of Wilder's motion for summary judgment and in opposition to Jones' motion for summary judgment were not authenticated or identified by affidavit or through other sworn testimony. *See* Evid.R. 901.

2. Even if this court were to consider the photographs submitted by Wilder, consideration of the exhibits does not lead to a different result. The Google Map images are consistent with deposition testimony offered by Jones about the layout and parking situation at 1901, 1903, and 1905 Shuler Avenue. The photograph of Wilder's facial injuries is consistent with her deposition testimony and Edith's deposition testimony about the extent of Wilder's injuries from the dog bite. Finally, the photograph of 1901 Shuler Avenue with an "x" marked on it (Exhibit A) does not alter this court's analysis. The location of the "x" does not place the dog bite in a parking lot or other common area or otherwise create a genuine issue of fact as to where the bite occurred. Rather, the "x" is placed in the yard area of 1901 Shuler, to the right of the tree.

**B. Statutory Dog-Bite Claim**

{¶ 23} "In Ohio, 'a suit for damages resulting from dog bites can be instituted under both statute and common law.'" *Pangallo v. Adkins*, 2014-Ohio-3082, ¶ 11 (12th Dist.), quoting *Thompson v. Irwin*, 1997 WL 666079, *3 (12th Dist. Oct. 27, 1997). *See also Beckett v. Warren*, 2010-Ohio-4, ¶ 7. "R.C. 955.28(B) . . . imposes strict liability upon the owner, keeper, or harborer of a dog 'for any injury, death, or loss to person or property that is caused by the dog' unless the injured individual was trespassing or committing a criminal offense other than a minor misdemeanor on the property." *Id.* at ¶ 10, quoting R.C. 955.28(B). Therefore, "[i]n an action for damages under R.C. 955.28(B), a plaintiff must prove (1) ownership, keepership, or harborship of the dog, (2) the actions of the dog were the proximate cause of damage, and (3) the monetary amount of damages." *Diaz v. Henderson*, 2012-Ohio-1898, ¶ 11 (12th Dist.). "Summary judgment is appropriate if no genuine issue of material fact exists as to either of the first two issues." *Id.* "[A] defendant's knowledge of the dog's viciousness and the defendant's negligence in keeping the dog are irrelevant in a statutory action" brought under R.C. 955.28(B). *Beckett* at ¶ 11.

{¶ 24} It is undisputed that Jones was neither the owner nor keeper of Cali. The only issue on appeal is whether Jones was a "harborer" of the dog, thereby subjecting him to liability. "In determining whether a defendant is a harborer of a dog, the central focus of a court's analysis 'shifts from possession and control over the dog to possession and control of the premises where the dog lives.'" *Jones v. Holmes*, 2013-Ohio-448, ¶ 11 (12th Dist.), quoting *Flint v. Holdbrook*, 80 Ohio App.3d 21, 25 (2d Dist. 1992). "[T]o be a harborer, a person must have possession and control of the premises *where the dog lives*, and silently acquiesce in the dog being kept there by its owner." (Emphasis in original.)

*Holmes* at ¶ 14.

{¶ 25} "With respect to landlord-tenant relationships, it is well-established that a lease transfers both possession and control of the leased premises to the tenant." *Richeson v. Leist*, 2007-Ohio-3610, ¶ 13 (12th Dist.), citing *Flint* at 25; and *Riley v. Cincinnati Metro. Hous. Auth.*, 36 Ohio App.2d 44, 48 (1st Dist. 1973). "Accordingly, 'a landlord's liability as a harborer for injuries inflicted by a tenant's dog is limited to those situations in which the landlord permitted the tenant's dog in common areas' of the landlord's property." *Id.*, quoting *Jowers v. Eastgate Village, Ltd.*, 1999 WL 374131, *2 (12th Dist. June 7, 1999). "Common areas are areas over which multiple people have possession and control." *Brown v. Terrell*, 2018-Ohio-2503, ¶ 13 (9th Dist.) Common areas typically include "sidewalks, parking lots, foyers, and hallways which are under the control of the lessor and which are reasonably necessary for the use and enjoyment of the leased property." *Id.* However, "where the leased property at issue consists of a single-family residence situated on a 'normal sized city lot, there is a presumption that the tenants possessed and controlled the entire property.'" *Richeson* at ¶ 13, quoting *Engwert-Loyd v. Ramirez*, 2006-Ohio-5468, ¶ 11 (6th Dist.). This includes the yard of a single-family home. *Good v. Murd*, 2014-Ohio-2216, ¶ 10 (6th Dist.) ("The yard of a single-family home is considered to be part of the tenant's property to possess and control"). Accordingly, "'[i]n a situation involving a landlord and tenant, a landlord cannot be a harborer of a dog that is kept on premises that the tenant has sole control over.'" *Diaz*, 2012-Ohio-1898, at ¶ 14 (12th Dist.), quoting *Jones v. Goodwin*, 2006-Ohio-1377, ¶ 6 (1st Dist.).

{¶ 26} It is uncontested that Hicks and Pickron rented 1901 Shuler from Jones and

Rita.[3] The property was one of three single-family homes located in a row on Shuler Avenue that Jones and Rita owned and rented to tenants. Hicks and Pickron had sole possession and control of 1901 Shuler throughout their tenancy. Though Jones and Rita co-owned 1901 Shuler, as well as 14 other rental properties, Rita was responsible for managing the rental properties. Rita engaged in routine and common acts relevant to that role, i.e., picking up monthly rent checks, responding to any maintenance or repair requests, and inspecting the properties. Such routine and common acts by the landlord do not constitute "control" for purposes of liability in tort. *Richeson* at ¶ 15. "'The control necessary as the basis for liability in tort implies the power and the right to admit people to [an area on the leased premises] and to exclude people from it.'" (Bracketed text in original.) *Id.*, quoting *Cooper v. Rose*, 151 Ohio St. 316, 319 (1949). Having leased 1901 Shuler, Jones and Rita clearly surrendered this power and right to Hicks and Pickron.

{¶ 27} Wilder maintains that the dog bite occurred in an area not subject to Hicks' and Pickron's exclusive control. She contends the bite occurred in a "common area"—the parking lot or parking area shared by 1901 Shuler, 1903 Shuler, and 1905 Shuler. With respect to the parking situation for these three rental properties, Jones testified during his deposition that the three properties "had plenty of parking right in front" and that there was an "open area to park in."

{¶ 28} While there was evidence introduced establishing a shared parking area for the tenants of all 1901, 1903, and 1905 Shuler, Wilder failed to present any evidence that

---

3. No written rental agreement was introduced into the record. Jones' deposition testimony was that he did "not know of" any lease agreement or lease paperwork for 1901 Shuler or any of the other rental properties he and Rita co-owned. A rental agreement not need be written; rather, "[a] landlord-tenant relationship can exist under an oral agreement." *Vallejo v. Haynes*, 2018-Ohio-4623, ¶ 32 (10th Dist.). *See also* R.C. 5321.01(D) (a "rental agreement" means "any agreement or lease, written *or oral*, which establishes or modifies the terms, conditions, rules, amount of rent charged or paid, or any other provisions concerning the use and occupancy of residential premises by one of the parties). (Emphasis added.)

the dog bite occurred in that shared parking area. Rather, her deposition testimony indicated she was mauled in "front of" 1901 Shuler, "roughly close to the tree" that was in the front yard of 1901 Shuler.

{¶ 29} Simply put, Wilder's claim that she "testified with specificity that she was attacked in [the] common [parking] area" during her deposition is not supported by the record. The portion of her deposition testimony that Wilder cites in support of her claim that the dog bite occurred in the parking area is as follows:

> [Wilder]:  I was right here.
>
> Q: I was going to ask you – I'll give you a red pen. Can you mark with an X on Exhibit A where you were located when you were attacked?
>
> [Wilder]: Roughly right there. Off to the side a little bit, but roughly close to the tree. I remember seeing the tree while I was getting attacked, like, over to my left.
>
> * * *
>
> [Wilder]:  I was heading to the side of the house to the backyard. I made it here.
>
> Q:  And when you're [sic] say "here," you're by the red X on Exhibit A?
>
> [Wilder]:  Yes. And then the front door opened. I saw Hunter and Cali was let out. The tie-out had been brought up and under the door, so she was on her tie-out whenever the door was opened and she was let out. And she went straight for me. There was no second – there was no second thought. There was no hesitation. As soon as the door was opened she was going at me and I didn't have time to react. She jumped up on me and the force of her knocked me down. This whole time this is happening my brother is 20, 30 feet over here.
>
> Q:  When you say "over here," you're pointing down towards 1903 or 1905, further down Shuler?
>
> [Wilder]:  Uh-huh, farther in the road.

Q: Okay. And what was he doing there in the road?

[Wilder]: He was playing football with some other kids who live on the street in this area. I have no idea what their names were. I usually just hung out with the girls. But Cali had me and remember I screamed as soon as she bit me, but I kind of like instantly went into shock and adrenalin took over. And she started shaking my head and I could like – I was being like dragged around like a rag doll.

And I didn't know what to do and I brought my knees up to my chest like this and I put my feet on her chest and I kicked as hard as I could. And I didn't move her, but I pulled myself back and she hadn't unclenched her jaw. So what happened was I ripped my face through her teeth. And then I – I don't know if she like was startled. I don't know what happened. But I had time to get up and run out of the like tie-out zone. But whenever I turned around she – like the tie out was snapping her back. She was like trying to still get me and I ran straight home.

Contrary to Wilder's assertions, the foregoing passage does not place the dog bite in the parking area shared by the tenants of 1901, 1903, and 1905 Shuler. Rather, Wilder's deposition testimony places the location of the dog-bite incident in the front yard of 1901 Shuler, near the tree on the property.[4]

{¶ 30} Wilder has suggested that the dog bite could have occurred in the parking lot rather than the yard because the leash Cali was tied to was "long enough to reach beyond the tree which bordered on the edge of the yard and the shared parking area." However, Wilder did not support this contention with any evidence. Neither Wilder, Jones, nor Edith testified about the leash being long enough to allow the dog to leave the front

_____

4. As previously discussed, "Exhibit A" was not properly submitted to the trial court as summary judgment evidence and is not being relied on by this court. However, as set forth in footnote 2, even if this court were to consider Exhibit A, it does not support Wilder's contention that the dog bite occurred in the parking area shared by the tenants of 1901, 1903, and 1905 Shuler. Rather, the location of the "x" on Exhibit A places the dog bite in the front yard of 1901 Shuler, to the right of the tree that is on the property.

yard of 1901 Shuler and enter the shared parking area. The only evidence in the record with respect to the length or reach of the leash was that it was long enough that when secured to the tree, it could be "brought up and under the [front] door" of 1901 Shuler so that Cali "was on her tie-out whenever the door was opened and she was let out."[5] Such

---

5. In support of her claim that the "leash was long enough to reach beyond the tree which bordered the edge of the yard and the shared parking area," Wilder cited to the following passage of her deposition testimony:

> Q: And in February 2014 or prior to February 2014, had you had interactions with this dog?
>
> [Wilder]: I, myself, had not actually interacted with it, but from the house I had seen it like outside and I knew that she was a black and white dog. I didn't know that she was a pit or anything like that. She was just a dog. And then – yeah, I never really like actually saw her. That was the only time I was close to her.
>
> Q: Was that day you got bit?
>
> [Wilder]: Uh-huh.
>
> Q: Did you know her name at the time?
>
> [Wilder]: I did. I did know her name because you could hear them yelling for her. You could hear Eric and Leann or somebody sometimes it was even the kids, you could hear them yell for her and I could hear them go, "Cali" or like "Cali, come in" and the dog would, you know, answer to it.
>
> Q: When the dog was outside, was it just allowed to roam free?
>
> [Wilder]: Sometimes, yes. I can definitely recall seeing her outside without any kind of leach or tie-out. But they did have a tie-out on the tree and it was wrapped up around here.
>
> . . .
>
> Q: If you will mark on Exhibit A where the tie-out – and when you say tie-out, explain that or describe that for me, please.
>
> [Wilder]: So it's like a thin cord that has a clip on it and it was wrapped around the tree and tied around it and then the clip would attach to the dog's collar and it would keep them – they could only go as far as the tie-out could.
>
> Q: Okay. Sometimes Cali was on a tie-out and sometimes Cali was

testimony does not indicate Cali had the ability to enter the shared parking area while on her leash and it certainly does not create an issue of fact as to where the dog-bite incident occurred. Rather, Wilder's deposition testimony places the location of the dog-bite incident in the front yard of 1901 Shuler, near the tree on the property.

{¶ 31} As this court has previously recognized, "a landlord cannot be a harborer of a dog that is kept on premises that the tenant has sole control over." *Diaz*, 2012-Ohio-1898, at ¶ 14 (12th Dist.). As the yard of a single-family home is considered to be part of the premises that the tenant has sole possession and control over, and the evidence presented on summary judgment establishes that the dog bite occurred in the front yard of 1901 Shuler, a single-family home, Jones cannot be liable as a "harborer" of the dog under R.C. 955.28(B). *See Murd*, 2014-Ohio-2216, at ¶ 10 (6th Dist.). Jones was entitled to summary judgment on Wilder's statutory dog-bite claim.

### C. Common-Law Negligence Claim

{¶ 32} We turn now to Wilder's common-law negligence claim. "'Under common law, a plaintiff suing for injuries inflicted by a dog must show that the defendant owned or harbored the dog, that the dog was vicious, that the defendant knew of the dog's viciousness, and that the defendant was negligent in keeping the dog.'" *Pangallo* 2014-

---

allowed to roam free?

[Wilder]: Yes.

Q: Do you know why sometimes one thing and sometimes the other?

[Wilder]: I really don't. . . .

Nowhere in this portion of her testimony—or in the remainder of her deposition testimony—does Wilder testify that Cali's leash allowed her to reach the shared parking area for 1901, 1903, and 1905 Shuler Avenue. No inference can be made from Wilder's testimony that the dog bite occurred in the shared parking area.

Ohio-3082, at ¶ 18 (12th Dist.), quoting *Diaz* at ¶ 12. A plaintiff's inability to prove any one of these elements is fatal to his or her claim of negligence. *Cherry Fork Farm Supply Co.*, 2024-Ohio-1523, at ¶ 68 (12th Dist.).

{¶ 33} Wilder argues the trial court erred in granting summary judgment to Jones on her common-law negligence claim as genuine issues of material fact exist as to whether the dog bite took place in a common area, thereby making Jones a "harborer" of the dog, and whether Jones had knowledge of the dog's dangerous and vicious propensities. We have already determined Jones was not a harborer of the dog, and it is undisputed that the dog was owned by Hicks and Pickron. As Jones was neither an owner nor a harborer of the dog, Wilder cannot prevail on her common-law negligence claim. Because a plaintiff's failure to prove any one element of a negligence claim is fatal to the cause of action, we need not address Wilder's arguments surrounding Jones' knowledge of Cali's dangerous and vicious propensities. *Albright v. Univ. of Toledo*, 2001 WL 1084461, *9 (10th Dist. Sept. 18, 2001); *Pangallo* at ¶ 18. Jones was entitled to summary judgment on Wilder's common-law negligence claim.

### III. CONCLUSION

{¶ 34} Having found no evidence in the record demonstrating a genuine issue of material fact exists as to whether Jones harbored the dog as is required for a statutory dog-bite claim brought under R.C. 955.28(B) and a common-law negligence claim, we conclude that the trial court did not err in granting summary judgment to Jones. Jones demonstrated that he was entitled to judgment as a matter of law on both the statutory and common-law dog-bite claims. Wilder's first and second assignments are, therefore, overruled.

- 17 -

- 18 -

{¶ 35} Judgment affirmed.


PIPER and SIEBERT, JJ., concur.


## J U D G M E N T   E N T R Y


The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


/s/ Robert A. Hendrickson, Presiding Judge


/s/ Robin N. Piper, Judge


/s/ Melena S. Siebert, Judge